**RECORD NOS. 14-1752(L); 14-1777 XAP**

In The

# United States Court Of Appeals

### For The Fourth Circuit

**MARY LOU BUTTON,**

*Plaintiff – Appellant/Cross-Appellee,*

v.

**KEVIN K. CHUMNEY; JANET L. CHUMNEY, husband and wife,**

*Defendants – Appellees,*

and

**CHESAPEAKE APPALACHIA, LLC,**

*Defendant – Appellee/Cross-Appellant,*

and

**WILLIAM H. GASTON; DIANE MARKET GASTON, husband and wife,**

*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG**

_____

## BRIEF OF APPELLANT/CROSS-APPELLEE

_____

George B. Armistead
BAKER & ARMISTEAD, PLLC
168 Chancery Row
P. O. Box 835
Morgantown, WV  26507
(304) 292-8473

*Counsel for Appellant/Cross-Appellee
  Mary Lou Button*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____      Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                            YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                            YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____      Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____           _____
        (signature)                                                  (date)

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF SUBJECT MATTER AND
   APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     Statutory Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     Discussion of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

         1.    Failure to Find the Address of the Record Owner Used
              by the Taxing Authority, the Sheriff of Monongalia
              County Tax Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

         2.    Failure to Inquire Whether Certified Mail Envelope Was
              Delivered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         3.    Failure to Follow Up . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*Glynn v. EDO Corp.*,
   710 F.3d 209 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Plemons v. Gale*,
   298 F. Supp. 2d 380 (S.D. W. Va. 2004) . . . . . . . . . . . . . . . . . . . . . . . 14

*Plemons v. Gale*,
   396 F.3d 569 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Reynolds v. Hoke*,
   226 W. Va. 497, 702 S.E.2d 629 (2010) . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES:**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

W. Va. Code § 11A-3-1, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

W. Va. Code § 11A-3-48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

W. Va. Code § 11A-3-51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

W. Va. Code § 11A-3-52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

W. Va. Code § 11A-3-52(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

W. Va. Code § 11A-3-54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

W. Va. Code § 11A-3-55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

W. Va. Code § 11A-3-59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

W. Va. Code § 11A-4-4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

W. Va. Code § 11A-4-4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**CONSTITUTIONAL PROVISION:**

U.S. Const. amend XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**RULE:**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

iv

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This case, originally filed in the Circuit Court of Monongalia County, West Virginia, was removed to the United States District Court for the Northern District of West Virginia by Chesapeake and the Chumneys on the grounds of federal question and supplemental jurisdiction.

In the lower court, Chesapeake's Motion for Summary Judgment was granted and the case was dismissed.  It is from that order that Button filed a timely appeal on.

The jurisdiction of the Court over this matter is granted by 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The issue before this Court is whether the district court's granting of the summary judgment was proper, *i.e.*, whether there are any genuine issues of material fact that can be resolved in favor of Button when looking at the evidence most favorable to the nonmoving party, or, in this case, the Appellant-Plaintiff. Fed. R. Civ. P. 56(c).

## STATEMENT OF THE CASE

On July 5, 2012, Button sued the Chumneys, the Gastons and Chesapeake in Monongalia County Circuit Court.  Button was allowed to file an amended and second amended complaint.

The second amended complaint asserts two counts.  (JA p. 22)  In Count I, Button alleges that "Chumney failed to exercise reasonably diligent efforts to provide notice of [his] intention to acquire title to the subject mineral interest" and seeks to set aside the tax deed and its successor deeds.  In Count II, Button asserts a cause of action under 42 U.S.C. § 1983 for the violation of her Fourteenth Amendment due process right to fair notice preceding the sale of her property.  Moreover, she alleges that the Chumneys' conduct was "malicious, intentional, avaricious, reckless and/or callously indifferent to [her] constitutionally and statutorily protected rights."  Button seeks compensatory and punitive damages, as well as attorney fees.

On October 3, 2013, the parties agreed to dismiss the Gastons from the case.  (JA p. 70)  In exchange, the Gastons assigned their claims against the Chumneys to Chesapeake.  Then, Chesapeake and the Chumneys removed the matter to the United States District Court for the Northern District of West Virginia on October 15, 2013.  On the same date, Chesapeake filed an answer and cross claim against

2

the Chumneys, asserting the Gastons' right to contribution and indemnification, pursuant to the December 23, 2009, general warranty deed. (JA p. 53)

On April 14, 2014, Chesapeake filed a motion for summary judgment, (JA p. 78) arguing that "Chumney exercised reasonable diligence in searching the public records of Monongalia County to discover the identity and whereabouts of Mills." After responsive and reply pleadings, on June 30, 2014, the District Court granted that motion. Notice of appeal was timely filed.

### Statement of the Facts

This case involves the purchase of an interest in oil and gas in and underlying parcels of real estate in Monongalia County, West Virginia, at a tax sale by the West Virginia State Auditor. The property was sold by the Auditor for failure to pay real estate taxes. The issues revolve around the statutory and constitutional duties of the purchaser of the mineral interest to comply with the due process requirements to give notice to the owner.

Historically, R. W. Sine owned the real estate situated upon Kings Run Well (including both the surface and mineral estates) prior to his death in 1939. By will, he devised a dower interest in the property to his wife, Lou Kent Sine, who died in 1949. She, in turn, devised the entire interest to her daughter, Hazeltine S. Mills ("Mills"). In 1981, Mills conveyed the surface estate and some of her

3

mineral interest to Consol Land Development Company. In the same instrument, Mills excepted and reserved all of the mineral interest lying below the Pittsburgh seam of coal (the "Subject Minerals"). When Mills died in 1999, the Subject Minerals passed by will to her daughter and the plaintiff in this case, Mary Lou Button ("Button").

Button, now 82 and living in a nursing home in Oklahoma, inherited those rights in her mother's will. During Button's ownership of the mineral rights the taxes became delinquent. The Sheriff of Monongalia County attempted to sell the tax lien on the interest at a delinquent tax sale and received no bids. Subsequently, that interest, along with other interests receiving no bids, were transferred to the West Virginia State Auditor for sale. The State Auditor maintains a website where such properties are listed and where prospective bidders may bid to purchase the tax lien on these unsold properties.

Defendant Kevin Chumney ("Chumney"), from his home in Ohio, visited the West Virginia State Auditor's website and bid the minimum bid for this and other interests. (The minimum bid was $1.00 plus back taxes and fees.)

After some time, Chumney was told his bid was accepted by the State Auditor. At that point, Chumney only became a prospective owner of the property. Under West Virginia law (*W. Va. Code* § 11A-3-52) a purchaser of a tax

4

lien against a delinquent interest in real estate (in this case, Chumney) has a statutory and constitutional duty to make reasonably diligent efforts to identify those parties entitled to redeem the property before he could receive a deed to the new property. In other words, the tax sale purchaser is required to make reasonably diligent efforts to assemble a list of parties who hold some interest in the property and make reasonably diligent efforts to notify them of the tax sale purchaser's intent to acquire title to the property interest.

Mr. Chumney testified that he conducted a search of the public records to ascertain facts to notify the record owner (Hazeltine Mills). In fact, it is undisputed that Mr. Chumney failed to find four instruments of public record which could have led to Mrs. Mills or her heirs. But most importantly, Mr. Chumney did not discover in the public record, and he did not use, the address that the Sheriff's Tax Office had used for years both before and after the taxes on the subject property became delinquent.

Further, Mr. Chumney made no efforts to determine if the certified mail that he sent to an address not used by the record owner for over a decade was returned as undeliverable.

By quitclaim deed dated July 6, 2009, Deputy Ringer conveyed the Subject Minerals to the Chumneys. On December 23, 2009, the Chumneys conveyed the

5

Subject Minerals with four other properties for $120,833.00 to William H. Gaston and Diane Market Gaston. The Gastons sold the Subject Minerals to Chesapeake as part of a multi-tract transaction for $1,147,025.69 on March 31, 2010. All of these transactions occurred within the first year of the three year statute of limitations to overturn such a deed.

These are the facts from which the case arises.

**Statutory Scheme**

The West Virginia Legislature has provided a statutory scheme that enables the State's counties to foreclose on property for which those obligated to pay taxes on the property have failed to do so. *See W. Va. Code* § 11A-3-1, *et seq*. Its purposes include, among others, "to permit deputy commissioners of delinquent and nonentered lands to sell such lands" and "to secure adequate notice to owners of delinquent and nonentered property of the pending issuance of a tax deed." *W. Va. Code* § 11A-3-1.

Accordingly, when taxes are delinquent, and other statutory means of selling the property have failed, the deputy commissioner "may sell such lands . . . to any party willing to purchase such property." *W. Va. Code* § 11A-3-48. Within two weeks following the transaction, the deputy commissioner must report the sale to the state auditor, whose approval is then required. *W. Va. Code* § 11A-3-51. If

6

the sale is approved, before receiving a deed to the property, the purchaser, within 45 days of approval, must "[p]repare a list of those to be served with notice to redeem and request the deputy commissioner to prepare and serve the notice." *W. Va. Code* § 11A-3-52.

In serving the notice, the deputy commissioner is required to provide the form notice set forth in § 11A-3-54 to nonresident recipients by certified mail. *W. Va. Code* § 11A-3-55. However, "[i]f the address of any person entitled to notice . . . is unknown to the purchaser and cannot be discovered by due diligence on the part of the purchaser, the notice shall be served by publication." *Id*. Finally, "[i]f the real estate described in the notice is not redeemed within the time specified therein, . . . the deputy commissioner shall, upon the request of the purchaser, make and deliver to the person entitled thereto a quitclaim deed for such real estate." *W. Va. Code* § 11A-3-59.

Those entitled to notice to redeem, but who were not properly served with the requisite notice, may bring a civil action to set aside a tax deed within three years of its delivery to the grantee. *W. Va. Code* § 11A-4-4(a). However,

> [n]o title acquired pursuant to this article shall be set aside in the absence of a showing by clear and convincing evidence that the person who originally acquired such title failed to exercise <u>reasonably diligent</u> efforts to provide notice of his intention to acquire such title to the complaining party or his predecessors in title.

7

*W. Va. Code* § 11A-4-4(b) (emphasis added).

Button, of course, is the "complaining party" in this case. Importantly, she admits that she was "not reasonably ascertainable as an owner of any interest in the Subject Minerals from the public records pertaining to the Subject Minerals maintained by the Monongalia County Clerk, the Monongalia County Sheriff's Tax Office, or the Monongalia County Assessor's Office prior to July 6, 2009." She had inherited the property from her mother, Hazeltine Mills, the record owner.

The statute, however, permits Button to satisfy her burden of proving, by clear and convincing evidence, the absence of reasonably diligent efforts vis-a-vis the complaining party or the tax purchaser's predecessors in title.

Under West Virginia law, the burden of proving that a tax sale purchaser exercised reasonably diligent efforts to notify the record owner is by clear and convincing efforts. On appeal from a motion for summary judgment, the facts and all reasonable inferences are to be viewed in the light most favorable to the appellant.

## SUMMARY OF THE ARGUMENT

There are more than enough facts in the records that give rise to a genuine issue as to whether the Chumneys performed their statutory and constitutional

duties to make reasonably diligent efforts to identify those parties entitled to redeem the subject property.

The record shows:

(1)    They failed to mail the required notices to the address on record with the Monongalia County Tax Office.

(2)    They made no efforts to determine whether that notice sent by certified mail had been returned as undeliverable.

(3)    Since that notice was returned as undeliverable, they failed to make legally required follow-up efforts to ascertain a correct mailing address.

(4)    They failed to find **every** document of record which could aid them in their initial or follow-up search efforts.  Every document of record.

Therefore, there are genuine issues of material fact whether the Chumneys met their statutory and constitutional duties to the appellant.

## ARGUMENT

### Standard of Review

The standard of review for a judgment based on a motion for summary judgment is a *de novo* review of the record drawing all reasonable inferences in the light most favorable to the nonmoving party.  *Glynn v. EDO Corp.*, 710 F.3d 209 (4th Cir. 2013).

9

In this case, the district court granted Defendant-Appellee's motion for summary judgment. Therefore, the Court should make a *de novo* review of the record drawing all reasonable inferences in the light most favorable to the appellant.

**Discussion of the Issues**

The State Auditor approved Mr. Chumney's bid for the property on October 23, 2008. Mr. Chumney was directed to submit the forms to Deputy Ringer, which he did. Pursuant to *W. Va. Code* § 11A-3-52(a)(1), Chumneys had 45 days from the date of the State Auditor's approval of the sale to provide a list of those individuals who were entitled to receive a notice to redeem the Subject Minerals to Deputy Ringer.

It was at this point that Mr. Chumney's duty to make reasonably diligent efforts to ascertain the whereabouts of the assessed owner, Hazeltine Mills, arose. *See Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005) ("Although a party required to provide notice need not 'undertake extraordinary efforts to discover . . . whereabouts . . . not in the public record,' it must use 'reasonably diligent efforts' to discover addresses that are reasonably ascertainable.")

10

"Reasonable diligence" has been defined as "a [fair] degree of diligence expected from someone of ordinary prudence under circumstances like those at issue." *See Reynolds v. Hoke*, 226 W. Va. 497, 500, 702 S.E.2d 629, 632 (2010).

Mr. Chumney's efforts on behalf of himself and his wife (as both took title to the property) to ascertain the whereabouts of the assessed owner of the Subject Minerals did not meet the reasonably diligent standard. In fact, his search could not have been more inadequate.

Mr. Chumney found **no** records pertaining to the Subject Minerals or Mrs. Mills. None. (Chumney depo., JA pp. 288-295)

Specifically, Mr. Chumney's efforts reveal a total absence of diligence in that:

### 1.     Failure to Find the Address of the Record Owner Used by the Taxing Authority, the Sheriff of Monongalia County Tax Office.

Mr. Chumney failed to find or employ Mrs. Mills' address that the Tax Office of the Sheriff of Monongalia County had used for the years before the property went delinquent for nonpayment of taxes and for the period until Mr. Chumney bid on them in August, 2008. This fundamental error conclusively gives rise to a genuine issue regarding whether Mr. Chumney was reasonably diligent.

11

This record was available in open books available to the public in the Sheriff's Tax Office or upon request in the Monongalia County Assessor's Office.

Mr. Chumney testified (Chumney depo., JA p. 279) that he asked a person in some office of the Monongalia County Courthouse for an address for Mrs. Mills. He testified that he was given an address in Triangle, Virginia. In fact, Mrs. Mills did not live at that address since the 1970s. (Perona Affidavit, JA 349) Having been given this single address, Mr. Chumney looked no further, (Chumney depo., JA 302) even though another address was readily and publicly available. And even though the records of deeds, leases and other recorded documents (also not found by Mr. Chumney) suggests no nexus of Mrs. Mills to anywhere in Virginia. Those records of a deed and lease document are discussed below. (JA 327-351)

Reasonably diligent efforts require Mr. Chumney to send his notice to any address at which the delinquent taxpayer may be found. Clearly, he did not do this. And at the very least, in the light most favorable to the appellant, this alone suggests a genuine issue of material fact as to the faithfulness of Mr. Chumney to his duty to a reasonable trier of fact.

12

2.    **Failure to Inquire Whether Certified Mail Envelope Was Delivered**.

Not surprisingly, since Mrs. Mills had not lived at the Triangle, Virginia, address for over three decades, the certified mail Mr. Chumney sent to Mrs. Mills at the Triangle, Virginia, address was returned as undeliverable.  Deputy Ringer did not inform Mr. Chumney that the notice to redeem had been returned undelivered, **and Mr. Chumney never inquired**.  (Chumney depo., JA 302)  Mr. Chumney knew or should have known from the hundreds of successful bids on other tax sale properties that the envelope being returned as undelivered was a possibility.  In fact, he had almost 19 envelopes returned for property he bid on in Monongalia County, West Virginia, at the same time he bid on appellant's property.  (Button Trial Exhibits 8-26)  In fact, Mr. Chumney was the successful bidder on at least 300 no bid or tax sale properties.  (Chumney depo., JA 277)  But Mr. Chumney did not inquire of anyone in this case whether the envelope was signed for or returned as undelivered.

3.    **Failure to Follow Up**.

The law imposes a duty upon the tax lien purchaser to make follow-up efforts to ascertain the whereabouts of the record owner of the property interest. *See Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005):

13

("However, when prompt return of an initial mailing makes clear that the original effort at notice has failed, <u>the party charged with notice must make reasonable efforts to learn the correct address before constructive notice will be deemed sufficient</u>. . . . There may be instances when reasonable follow-up efforts would yield <u>no different address</u>; and the Constitution only requires reasonable efforts, given all of the circumstances of a particular case, not receipt of actual notice. . . . But, as the district court initially remarked, and as most cases addressing this situation recognize, it is, at the very least, reasonable to require examination (or reexamination) of all available public records when initial mailings have been promptly returned as undeliverable.") (emphasis inserted). *Also see Plemons v. Gale* 298 F. Supp. 2d 380 (S.D. W. Va. 2004) ("Therefore, the court FINDS that when notice sent by certified mail is returned unclaimed, the reasonable diligence standard requires the party charged with giving notice to undertake further inquiry reasonably calculated <u>to ascertain the intended recipient's correct mailing address</u>.") (emphasis inserted)

But Mr. Chumney testified that he did not attempt this since he didn't receive the return receipt until he received the deed. But in the meantime, Mr. Chumney did not inquire.

Had Mr. Chumney made follow-up efforts to find a serviceable address for Mrs. Mills, here's what he could have found with the exercise of reasonable diligence:

(1)     Most importantly, Mrs. Mills' address that was used by the Sheriff's Tax Office when the taxes went delinquent and for subsequent years thereafter. As stated before, this and this alone in the light most favorable to appellant raises a genuine issue of material fact as to the reasonable diligence of Mr. Chumney's

14

search.  But if he failed to find this easily discovered address after a second search, he should have found the following:

(2)    An oil and gas lease granted by Hazeltine S. Mills and John Mills in 1980 (recorded in 1980) to an oil and gas company revealing the Mills' State College, Pennsylvania, address at the time, notarized in State College Boro, Centre County, Pennsylvania, recorded in the Monongalia County Clerk's office in Deed Book No. 843, at Page 185.  (Button Trial Exhibit 4 of record)

(3)    An oil and gas lease appearing to be nearly identical to the one above except for a different grantee containing the Mills' State College address and the same notary acknowledgment recorded in said Clerk's office on May 14, 1985, in Deed Book No. 924, at Page 595.  (Button Trial Exhibit 2 of record)

(4)    A deed from Hazeltine S. Mills and John Mills, wife and husband, for surface land to a land company recorded in said Clerk's office on February 18, 1991.  That deed reveals that Hazeltine S. Mills was the daughter of R. W. Sine and that R. W. Sine died in Monongalia County, West Virginia.  The signatures of the Mills were also acknowledged by a notary in State College Boro, Centre County, Pennsylvania.  That deed is recorded in said Clerk's office in Deed Book No. 850, at Page 94.  (Button Trial Exhibit 3 of record)

15

(5)    An extension of that oil and gas lease listed in subparagraph (a) to that same company dated May 1, 1985, revealing John and Hazeltine Mills' social security numbers recorded in said Clerk's office in Deed Book No. 925, at Page 641.  (Button Trial Exhibit 1 of record)

He failed to find all of these documents.  (Chumney depo., JA 258)

From reading the documents that Mr. Chumney failed to discover or glean, a person could learn or reasonably conclude the following:

(a)    Hazeltine S. Mills was married to John W. Mills.  (Button Trial Exhibits 1-4 of record)

(b)    That the documents recorded in 1980 and 1985 signed by Mr. and Mrs. Mills were notarized in Centre County, Pennsylvania.  (Button Trial Exhibits 2, 3, and 4 of record)

(c)    Hazeltine Mills inherited the property from her father, R. W. Sine, who died in 1949.  (Button Trial Exhibits 3 and 6 of record)

(d)    Hazeltine Mills' maiden name was Hazeltine Sine.  (Button Trial Exhibit 3 of record)

(e)    Hazeltine Mills' social security number.  (Button Trial Exhibit 1 of record)

16

Had he looked further, in the very same room in the very same courthouse in which he should have been searching, he could have discovered that Hazeltine Mills, nee Hazeltine Sine, was born in that county (Monongalia) in 1903.

These facts may have led a reasonably diligent person to conclude that a person who suddenly stopped paying her real estate taxes in 2000 at the age of 97 MAY have died.  And using the information on record he could fine, he may have concluded that Mrs. Mills had a nexus to Centre County, Pennsylvania, the home of State College.  Had this person with the sophistication to bid on delinquent properties in West Virginia from his home in Ohio, using his computer and the internet, made a simple phone call to the Prothonotary of Centre County, Pennsylvania, another depository of public records, he could have found that Mrs. Mills died in State College, Pennsylvania, in 1999 and could have requested and received the name and address of all of Hazeltine Mills' heirs, as Mrs. Mills died in 1999.  That list of course contains the name of appellant Mary Lou Button, Mrs. Button having inherited this property from her mother, Mrs. Mills, by her will, also of record in that county.  (Button Trial Exhibit 33 of record)

Whether such efforts are within or go beyond reasonably diligent efforts to find Mrs. Mills is a question for a reasonable trier of fact.

17

There are more than ample facts to raise a genuine issue of material fact as to whether Mr. Chumney performed his statutory and constitutional duty under the statutes of the State of West Virginia. This matter should be remanded for further proceedings before a trier of fact.

## CONCLUSION

The record in this matter reveals many material facts that give rise to genuine issues concerning whether the Chumneys performed their statutory and constitutional duties in providing the notice to the record owner of the subject property.

The facts, when viewed in the light most favorable to the appellant, show that the Chumneys utterly failed to comply with their statutory and constitutional duties to make reasonably diligent efforts to:

(1) ascertain the whereabouts of the record owner of the oil and gas interest at issue.

(2) inquire whether the certified mail envelope they attempted to send to the record owner was returned as undeliverable; and

(3) make follow-up efforts to determine if there was another address for the record owner that could be found or if there was anything else in the record which might reasonably lead them to the record owner.

18

This matter should be remanded to the District Court for a hearing by a trier of fact.

                                      MARY LOU BUTTON,
                                      Appellant

                                      BY COUNSEL

/s/ George B. Armistead
George B. Armistead
BAKER & ARMISTEAD, PLLC
168 Chancery Row
P. O. Box 835
Morgantown, West Virginia  26507-0835
West Virginia State Bar ID No. 159
Telephone:  (304) 292-8473

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains 3,847 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using WordPerfect 12 in 14 point Times New Roman.

\s\ George B. Armistead
George B. Armistead

Dated: January 9, 2015

*Counsel for Appellant/Cross-Appellee*
*Mary Lou Button*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 9, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

W. Henry Lawrence, IV
Amy M. Smith
Lauren A. Williams
STEPTOE & JOHNSON, PLLC
400 White Oaks Boulevard
Bridgeport, WV  26330
(304) 933-8186

*Counsel for Appellee/Cross-Appellant*
  *Chesapeake Appalachia, LLC*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219